UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

KEVIN SHERMAN,

                    Plaintiff,

          v.

THE CITY OF NEW YORK, THE CITY OF
NEW YORK POLICE DEPARTMENT,
CYNTHIA LAGARES, individually,
EMMANUEL GONZALEZ, individually, and
BRUCE CEPARANO, individually,

                    Defendants.

**MEMORANDUM AND ORDER**
18-cv-6907 (LDH)

LaSHANN DeARCY HALL, United States District Judge:

Plaintiff Kevin Sherman brings the instant action against Cynthia Lagares, Emmanuel Gonzalez, Bruce Ceparano (collectively, the "Individual Defendants"); the City of New York Police Department ("NYPD"); and the City of New York asserting claims for discrimination, hostile-work environment, and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); the Age Discrimination in Employment Act of 1967 ("ADEA"), 42 U.S.C. § 1981; 42 U.S.C. § 1983; and related claims under the New York State Human Rights Law ("NYSHRL"), and the New York City Human Rights Law ("NYCHRL").  Defendants move pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss the complaint in its entirety.

## BACKGROUND[1]

Plaintiff, a 51-year-old African American man, began working as an officer for the NYPD on or around June 30, 1992.  (Am. Compl. ("Compl.") ¶¶ 8, 16-17, ECF No. 16.) Sometime around 2004, Plaintiff was transferred to the 72nd Precinct (the "Precinct").  (*Id.* ¶

---

[1] The following facts are taken from the complaint and are assumed to be true for the purpose of this memorandum and order.

18.)  At all times relevant to this action, the Individual Defendants were each assigned to the Precinct.  (*Id.* ¶¶ 11-15.)

On or around June 14, 2016, Plaintiff was promoted to plant manager, becoming the first and only African American to attain that position at the Precinct.  (*Id.* ¶¶ 22, 24.)  According to the complaint, the plant manager position was less physically demanding than Plaintiff's previous assignment in the patrol bureau, included an exclusive parking space, and required Plaintiff to work only from 6:00 a.m. to 2:35 p.m.  (*Id.* ¶ 22)

Beginning around late June 2016, Defendant Lagares, then the ranking administrative lieutenant, began harassing and discriminating against Plaintiff.  (*Id.* ¶ 25.)  Specifically, Defendant Lagares is alleged to have asked Plaintiff "how old are you" and "Do you think you are my child," and called Plaintiff "boy."  (*Id.* ¶ 26.)  Plaintiff complains that shortly after his promotion to plant manager, the following message was displayed on monitors throughout the Precinct:  "congratulations on getting the plant manager position officer [Plaintiff] it only took you 24 years."  (*Id.* ¶ 27.)  Defendant Lagares supervised the personnel responsible for displaying messages on monitors throughout the Precinct.  (*Id.* ¶ 27.)

Around August 2016, Defendant Lagares began ordering Plaintiff to perform menial tasks such as cleaning bathrooms and other janitorial work at the Precinct.  (*Id.* ¶ 33.)  Although there were at least three janitors employed at the Precinct, Defendant Lagares ordered that only Plaintiff was to clean bathrooms and perform janitorial tasks.  (*Id.* ¶¶ 34, 38.)  No other plant managers have ever been assigned to clean bathrooms or perform janitorial tasks at the Precinct.  (*Id.* ¶ 35.)  Plaintiff was also required to work in an administrative capacity and go on "All Out Patrols," although no other plant managers were required to do the same.  (*Id.* ¶¶ 41-43.)

2

At some point, Defendant Lagares began threatening to remove Plaintiff from the plant manager role.  (*Id.* ¶¶ 28, 31.)  When, in August 2016, Defendant Gonzalez became aware that Defendant Lagares sought to demote Plaintiff from plant manager, Defendant Gonzalez stated to Plaintiff:  "[Defendant Lagares] always does this.  [Defendant Lagares] hates men, why won't someone, or you, hit it and take one for the team."  (*Id.* ¶ 39.)

On or about April 13, 2017, Lagares summoned Plaintiff to Ceparano's office where together, Lagares and Ceparano falsely accused Plaintiff of, among other things, being lazy and abandoning his command post without notifying his co-workers.  (*Id.* ¶¶ 44-45.)  Lagares and Ceparano then informed Plaintiff that he would be demoted from Plant Manager to a late patrol shift (3:00 p.m. to 11:35 p.m.) effective April 16, 2017.  (*Id.* ¶ 46.)  Defendants replaced Plaintiff with Officer Escolera, a less-experienced, Hispanic officer, under 40 years old, and at least 12 years Plaintiff's junior.  (*Id.* ¶ 48.)  Officer Escolera has never been assigned to clean bathrooms, perform janitorial work, or go on "All Out Patrols" as plant manager.  (*Id.* ¶ 49.)  Prior to Plaintiff's demotion, from December 16, 2015 to December 15, 2016, Plaintiff's performance record was excellent, and he received high ratings in his evaluations during that period.  (*Id.* ¶ 23.)

On or around April 18, 2017, Plaintiff complained of discrimination to NYPD's Internal Office of Equal Employment Opportunity ("NYPD EEO").  (*Id.* ¶ 50.)  Another complaint with NYPD EEO followed on April 26, 2017.  (*Id.* ¶ 54.)  At that time, Plaintiff complained of "age, race, and sex-based discrimination, retaliation, and hostile work environment" by Defendants Lagares and Gonzalez.  (*Id.* ¶ 54.)  Plaintiff "reiterated and elaborated upon" the April 26, 2017 complaint on May 8, 2017.  (*Id.* ¶ 55.)

3

Plaintiff also complained of discrimination to his union delegates Christian Sabino and Robert Anderson, and informed them that he had filed a formal complaint against Gonzalez and Lagares. (*Id*. ¶ 56.) Andersen then relayed to Gonzalez and Lagares that Plaintiff had filed a complaint with the union as well as NYPD EEO charging them each with discrimination. (*Id*. ¶ 57.) At some time thereafter, the details of Plaintiff's NYPD EEO complaint were revealed to Gonzalez and Lagares in violation of NYPD EEO policy. (*Id*. ¶ 62.) Within one week of Plaintiff's NYPD EEO complaint, Andersen informed Plaintiff that Lagares had instructed him to convey certain threats to Plaintiff. (*Id*. ¶ 63.) Specifically, Andersen was to inform Plaintiff that "[Defendant Lagares] has a lot of friends, knows a lot of people, and a lot of people like [Defendant Lagares] and if [Plaintiff] kept talking about [Defendant Lagares] she would do [sic] a complaint on [Plaintiff]." (*Id*.)

In or around May 2017, officers from the NYPD Appearance Control Unit visited Plaintiff at his home. (*Id*. ¶ 59.) According to the complaint, NYPD Appearance Control officers only conduct such home visits when NYPD employees are suspected of abusing sick leave. (*Id*.) Plaintiff has never misused sick leave, and alleges that the NYPD Appearance Control officers' home visit resulted from false allegations made by Gonzalez and/or Lagares in an attempt to intimidate Plaintiff and document pretextual grounds for retaliation against Plaintiff. (*Id*. ¶¶ 60-61.) After feeling intense pressure from Defendants Gonzalez and Lagares to retire, and fearing further retaliation, Plaintiff began the "resignation process" on May 19, 2017. (*Id*. ¶ 68.) In or around June 2017, a walking cane and a sticker that read "TRUMP PENCE MAKE AMERICA GREAT AGAIN! 2016" were affixed to Plaintiff's locker. (*Id*. ¶¶ 70, 73.) They remained there for weeks. (*Id*. ¶¶ 72, 78.) According to the complaint, this sort of

"vandalism" is a violation of NYPD's policy and precinct supervisors are required to check for such violations on a daily basis.  (*Id*. ¶ 72.)

On or around June 20, 2017, Plaintiff received a letter indicating that the NYPD EEO would not be taking any corrective action in response to his complaints.  (*Id*. ¶ 79.)  Plaintiff's employment with the NYPD ended on or about August 31, 2017.  (*Id*. ¶ 80.)

## STANDARD OF REVIEW

To withstand a Rule 12(b)(6) motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when the alleged facts allow the court to draw a "reasonable inference" of a defendant[s'] liability for the alleged misconduct.  *Id*.  While this standard requires more than a "sheer possibility" of a defendant[s'] liability, *id*., "[i]t is not the Court's function to weigh the evidence that might be presented at trial" on a motion to dismiss. *Morris v. Northrop Grumman Corp.*, 37 F. Supp. 2d 556, 565 (E.D.N.Y. 1999).  Instead, "the Court must merely determine whether the complaint itself is legally sufficient, and, in doing so, it is well settled that the Court must accept the factual allegations of the complaint as true." *Id*. (citations omitted).

## DISCUSSION

### I.   Timeliness of Plaintiff's Claims

Generally, to be timely, a plaintiff's discrimination claim must be filed within 180 days after the alleged unlawful employment action occurs, unless an exception applies.  42 U.S.C. § 2000e-5(e)(1).  Because New York is a so-called deferral state with a fair employment agency, an employment discrimination claim under Title VII or the ADEA must be filed with the EEOC

within 300 days of the alleged discrimination.  *Pikulin v. City Univ. of New York*, 176 F.3d 598,

599 (2d Cir. 1999) (citing 42 U.S.C. § 2000e-5(e)(1)); *see also Harris v. City of New York*, 186

F.3d 243, 248 n.2 (2d Cir. 1999) (noting that the existence of its State Division of Human Rights

makes New York a so-called deferral state for Title VII purposes, and thus the 300–day rule

applies); *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 328–29 (2d Cir. 1999) ("New York

is a deferral state under the ADEA because it has a law prohibiting age discrimination and the

[New York State Division of Human Rights] is empowered to remedy it").  Here, Plaintiff filed

his charge of discrimination with the EEOC on October 16, 2017.  (Compl. ¶ 3.)  Accordingly, to

the extent that Plaintiff's Title VII and ADEA claims are based on conduct that occurred prior to

December 20, 2016, such claims are presumably time-barred.

Plaintiff seeks to avoid this outcome by invoking the continuing-violation doctrine, which

allows "otherwise time-barred claims [to] proceed when separate acts 'collectively constitute one

unlawful employment practice.'"  *Staten v. City of New York*, 726 F. App'x 40, 43 (2d Cir. 2018)

(quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)).  The continuing-

violation doctrine is applicable where, among other things, the plaintiff demonstrates "a systemic

policy or practice of discrimination that operated, in part, within the limitations period[.]"  *Nat'l*

*R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 107 (2002).

Plaintiff's complaint fails to include allegations that might allow the Court to infer the

existence of any systemic practice or policy of discrimination.  That certain of the conduct was

alleged to have been committed by a supervisor is not enough transform the conduct into a

systemic practice or policy. *See, e.g., Fanelli v. New York*, 51 F. Supp. 3d 219, 228 (E.D.N.Y.

2014) (finding the continuing violation doctrine did not apply in a case where the Plaintiff's

supervisor was amongst the Defendants); *De La Pena v. Metro. Life Ins. Co.*, 953 F. Supp. 2d

393, 407 (E.D.N.Y. 2013), aff'd, 552 F. App'x 98 (2d Cir. 2014) (same).  Plaintiff's claims, to the extent that they are based on any pre-December 20, 2016 allegations, are therefore time-barred with respect to his discrimination and retaliation claims under Title VII and the ADEA.  Of course, the analysis is different with respect to § 1983 and § 1981 claims, as the statute of limitations applicable to those claims is three years.  *See Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 225 (2d Cir. 2004) ("The statute of limitations applicable to claims brought under §§ 1981 and 1983 in New York is three years.").  Those claims are timely.

## II.     Plaintiff's Title VII, Section 1983, and NYSHRL Claims

### A.     Discrimination[2]

Discrimination claims brought under Title VII, §1983, and NYSHRL are analyzed using the burden-shifting framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *Szewczyk v. Saakian*, 774 F. App'x 37, 38 (2d Cir. 2019) ("Claims of national origin, religion, and age discrimination under the NYSHRL are analyzed under the same standards as Title VII . . . claims." (citing *Spiegel v. Schulmann*, 604 F.3d 72, 80 (2d Cir. 2010))); *see also Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996) ("[W]hen § 1983 is used as a parallel remedy with Title VII in a discrimination suit, as it is here, the elements of the substantive cause of action are the same under both statutes.").

At the first step of this analysis, a plaintiff bears the burden of establishing a prima facie case of employment discrimination by showing that (1) he belongs to a protected class; (2) he was qualified for the position he held; and (3) he suffered an adverse employment action that (4) occurred under circumstances giving rise to an inference of discrimination.  *Swierkiewicz v.*

---

[2] Plaintiff raises several allegations regarding conduct that occurred after his termination.  These allegations are not relevant to the Court's determination and have therefore been omitted.  (Compl. ¶¶ 81-109.)

*Sorema N. A.*, 534 U.S. 506, 506 (2002).  However, to survive a motion to dismiss, a plaintiff

need not plead a prima facie case of employment discrimination.  *Id*. at 515.  Rather, a plaintiff

must only allege facts that "plausibly support that the plaintiff is a member of a protected class,

was qualified, suffered an adverse employment action[;] and [minimally] support [sic] . . . the

proposition that the employer was motivated by discriminatory intent."  *Littlejohn v. City of New

York*, 795 F.3d 297, 311 (2d Cir. 2015) (emphasis omitted).

        1.      Adverse Employment Actions

Defendants contend that Plaintiff's discrimination claims should be dismissed for failure

to sufficiently allege an adverse employment action.  (Mem. L. Supp. Defs.' Mot. Dismiss Am.

Compl. ("Defs.' Mem.")  9-11, ECF No. 23.)  An employee is subjected to an adverse

employment action where the employer's conduct causes a "materially adverse change in the

[plaintiff's] terms and conditions of employment."  *Vega v. Hempstead Union Free Sch. Dist.*,

801 F.3d 72, 85 (2d Cir. 2015).  "Examples of materially adverse changes include termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a

material loss of benefits, significantly diminished material responsibilities, or other indices

unique to a particular situation."  *Id*.  Here, Plaintiff's race and gender discrimination claims are

predicated upon three purported adverse employment actions:  (1) demotion from plant manager;

(2) negative work evaluations; and (3) the assignment of menial and janitorial tasks.  Defendants

maintain that none of these amount to an adverse employment action.  (*See generally*, Defs.

Mem. 9-11.)  The Court agrees, in part.

With respect to Plaintiff's demotion, Defendants argue that it is insufficiently pleaded

because Plaintiff failed to allege that any purported demotion was evidenced by a decrease in

8

wage or salary.[3]  (Defs.' Mem. 10-11).  Relying on *Williams v. All National, Inc.*, 24 Fed. Appx. 50 (2d. Cir. 2001), Plaintiff argues that a decrease in salary is not a prerequisite to a finding of an adverse employment action.  (Pl.'s Mem 13–14.)  On this point Plaintiff is correct.  As the Plaintiff aptly notes, in *Williams*, the Second Circuit found that there was sufficient evidence to raise an inference that the plaintiff's transfer was an adverse employment action because, although the plaintiff's pay was not reduced and she was moved up in company hierarchy, she may have nonetheless been assigned to a position with diminished responsibility and prestige. *See Williams*, 24 F. App'x at 53 ("A plaintiff can show an adverse employment action where, even though she was transferred to a job with the same rank and pay, the new position was arguably less prestigious or entailed diminished responsibilities.").  In other words, a decrease in wage or salary is not alone dispositive of whether a demotion or other job transfer constitutes an employment action.  While this may be true, *Williams* ultimately proves unhelpful to Plaintiff as the other sort of facts which were critical to the court's finding are not present here.  Plaintiff has not pleaded for example that he was transferred to a position with diminished responsibilities or prestige.  In fact, according to the complaint, Plaintiff's alleged demotion was marked only by a schedule change, loss of an exclusive parking space, and more physically demanding work. (Compl. ¶¶ 22, 46.)  These allegations are insufficient to support an adverse employment action. *See also Ahmed v. City Univ. of N.Y.*, No. 15-CV-7375, 2017 U.S. Dist. LEXIS 47870, at *9-*10 (E.D.N.Y. Mar. 27, 2017) (dismissing economics professor's discrimination claim, because his

---

[3] Relatedly, Defendants also contend that Plaintiff was never actually promoted to plant manager, but remained at all times a patrol officer who was temporarily transferred from patrol to an administrative position inside of the Precinct.  (*Id*. 10).  This argument is buttressed, according to the Defendants, by the fact that Plaintiff does not allege that he received an increase in salary or rank associated with his alleged promotion.  The Court need not address these contentions as on a motion to dismiss, the Court must evaluate Plaintiff's claims based on the allegations as pleaded in the complaint.

re-assignment to teach Economics 210 did not constitute an adverse employment action, because it did not have a material impact on the terms and conditions of his employment, and did not affect his compensation).

Plaintiff also contends that he suffered an adverse employment action in the form of a "consistent pattern of demonstrably false negative allegations regarding [his] work performance." (Pl.'s Opp. 13.) Tellingly, Plaintiff's complaint in this regard is not based on Plaintiff's performance evaluations, which he maintains in his opposition "were stellar, as they were not conducted by any of the defendants or their subordinates." (*Id*. 14.) Instead, Plaintiff alleges that he was subjected to "unfair and baseless criticism of his work performance" including by being called "lazy," and being falsely accused of leaving his post without permission. (*Id*; Compl. ¶ 45.) Conspicuously absent from the complaint are any allegations that might support the inference that the terms and conditions of Plaintiff's employment were materially changed as a result of this alleged criticism. As such, these allegations too fail to support a finding of an adverse employment action.

Defendants' arguments with respect to Plaintiff's allegations that he was forced to conduct "All Out Patrols" and perform menial and janitorial tasks are not similarly persuasive. According to Defendants, because Plaintiff failed to explain the general responsibilities of a plant manager, the Court cannot discern whether these tasks were outside of the scope of Plaintiff's responsibilities. (Defs.' Mem. 9-11.) This may be true with respect to the All Out Patrols. However, Plaintiff's allegations that he was required to perform menial and janitorial duties are another matter altogether. (Compl. ¶¶ 33-34.). Plaintiff alleges that he was a decorated officer with the NYPD for over 25 years, and that, after he assumed the role of plant manager, he was assigned menial and janitorial duties not previously assigned to other plant managers. (*Id*. ¶¶ 16-

10

17, 33-35.)  Indeed, it is alleged that at the time of this assignment, the Precinct had janitorial staff who were explicitly informed that they no longer had to perform certain tasks because those tasks had relegated to Plaintiff.  (*Id.* ¶ 38.)  Surely on these facts, the Court can infer that Plaintiff has sufficiently alleged that he was subjected to a materially adverse change in his employment to the extent he was assigned menial and janitorial tasks.

2.       Inference of Discrimination

A finding that a plaintiff has sufficiently alleged an adverse employment action may not alone defeat a motion to dismiss.  This is particularly so, where, as here, the defendants also maintain that any alleged adverse employment action did not occur under circumstances giving rise to an inference of discrimination.  That is, to defeat a motion to dismiss a plaintiff must also allege that the defendant "took adverse action against [him] at least in part for a discriminatory reason."  *Vega*, 801 F.3d at 87.

With respect to his gender discrimination claim, Plaintiff has failed to plead a single fact that gender played any role in any adverse action taken against him.  In fact, Plaintiff's gender-discrimination claim hinges on the sole allegation that Gonzalez insinuated that Plaintiff should have sex with Lagares to secure Plaintiff's position as Plant Manager.  (Compl. ¶ 39.)  However, having now determined that the sole adverse action at issue is Plaintiff's assignment to menial or janitorial tasks, Plaintiff was required to show how gender played a role in that regard.  He has not.

Plaintiff's race-based discrimination claim does not suffer from same deficiency as there are ample allegations to support an inference of racial discrimination.  That is, Plaintiff alleges that he was the only African American to ever hold the plant manager position at the Precinct, and that, none of the other plant managers were tasked with menial or janitorial duties.  (Compl.

11

¶¶ 35–37.)  In urging the Court to dismiss Plaintiff's claim, Defendants contend that Plaintiff has failed to sufficiently allege that he was similarly situated to his comparators because he and the other plant managers had different supervisors.  (Defs.' Mem. 13.)  Not so.  According to the complaint, Plaintiff was replaced as Plant Manager by Escolera, a Hispanic male.  And importantly, both Plaintiff and Escolera reported to Lagares in their role as Plant Manager.  (Compl. ¶¶ 12, 48.)  Yet, Escolera is not required to perform menial and janitorial tasks.  (*Id*. ¶ 49.)  On these facts Plaintiff has sufficiently pleaded acts to allow for the inference of racial discrimination.[4]

### B.     Hostile-Work Environment

A plaintiff asserting a hostile-work-environment claim under Title VII, must allege that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."  *Littlejohn*, 795 F.3d at 320-21 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)).  To be actionable, "the conduct complained of must be severe or pervasive enough that a reasonable person would find it hostile or abusive, and the victim must subjectively perceive the work environment to be abusive."  *Id.*  In assessing the sufficiency of a plaintiff's allegations, a court must "consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

---

[4] Notably, contrary to Defendants' contention, a plaintiff need not allege that he and his comparators' circumstances were identical.  Instead, to create an inference of discrimination a plaintiff need only allege that he and his comparators were similarly situated in all material respects.  *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014) ("To establish an inference of discrimination, a plaintiff must allege that she was similarly situated in all material respects to the individuals with whom she seeks to compare herself . . . The plaintiff's and comparator's circumstances must bear a reasonably close resemblance, but need not be identical." (internal quotations omitted)).  Plaintiff has done so here as he alleges that he was subjected to treatment that differed from that of all other plant managers at the Precinct.  What is more, "[w]hether two employees are similarly situated . . . presents a question of fact, rather than a legal question to be resolved on a motion to dismiss."  *Id.*

humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.* (quoting *Harris*, 510 U.S. at 21).

Defendants contend that the Court should dismiss Plaintiff's hostile-work-environment claim because "while it is unclear, given the alleged conversations within Plaintiff's precinct concerning the proclivities of white supremacists and white nationalists to support the president, whether the Trump campaign sticker was sufficiently severe . . . [t]he one-time placement of the campaign sticker on Plaintiff's locker is, however, insufficiently pervasive." (Defs.' Mem. 19.). In other words, according to Defendants, Plaintiff must plead conduct that is both severe and pervasive. Defendants' misapprehend the law.

A hostile-work-environment claim is sufficiently pleaded where a Plaintiff alleges a workplace environment that is permeated with discrimination that is severe or pervasive – the conduct need not be both. *See Littlejohn*, 795 F.3d at 320-21. So, while the Court agrees that the one-time placement of the sticker was not pervasive, this conclusion does not require dismissal of Plaintiff's claim. Because Defendants' expressly declined to argue that the placement of the sticker was not sufficiently severe, the claim survives.[5]

## C.    Plaintiff's § 1983 Claims Against the Individual Defendants

Under § 1983 an individual may file suit against any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or

---

[5] Defendants' contention that the placement of the Trump-Pence sticker is the only timely allegation further underscores their lack of understanding of federal employment discrimination law. (Defs.' Mem. 19.) Under the continuing-violation doctrine in a hostile-work-environment claim, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The Court may therefore consider all allegations supporting Plaintiff's hostile-work-environment claim provided that at least one allegation is timely.

immunities secured by the Constitution and laws." 42 U.S.C. § 1983. While § 1983 creates no

substantive rights itself, it provides a vehicle through which individuals may pursue remedies for

any violation of rights granted to them under federal law–including those related to

discrimination. *Patterson*, 375 F.3d at 225 ("Section 1983 is not itself a source of substantive

rights. It merely provides a method for vindicating federal rights elsewhere conferred. Indeed,

the express cause of action for damages created by § 1983 constitutes the exclusive federal

remedy for violation of the rights guaranteed in § 1981 by state governmental units . . . ."

(internal citations and quotations omitted)). Notably, "when § 1983 is used as a parallel remedy

with Title VII in a discrimination suit, as it is here, the elements of the substantive cause of

action are the same under both statutes." *Jemmott*, 85 F.3d at 67. As such, to prevail at this

stage of the litigation, Plaintiff must sufficiently allege facts that "plausibly support[] . . . that the

plaintiff is a member of a protected class, was qualified, suffered an adverse employment

action[;] and [minimally] support . . . the proposition that the employer was motivated by

discriminatory intent." *Littlejohn*, 795 F.3d at 311 (emphasis omitted).

Additionally, as Plaintiff is asserting claims against the Individual Defendants in their

official capacities, Plaintiff must also allege that the individuals were personally involved in the

conduct that violated his rights. *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d

107, 127 (2d Cir. 2004) ("An individual cannot be held liable for damages under § 1983 merely

because he held a high position of authority, but can be held liable if he was personally involved

in the alleged deprivation."). A plaintiff may demonstrate a defendant's personal involvement

by showing that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the
> defendant, after being informed of the violation through a report or appeal, failed
> to remedy the wrong, (3) the defendant created a policy or custom under which

14

> unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference ... by failing to act on information indicating that unconstitutional acts were occurring.

*Littlejohn*, 795 F.3d at 314.  Where a plaintiff seeks to impose supervisory liability "a plaintiff must also establish that the supervisor's actions were the proximate cause of the plaintiff's constitutional deprivation."  *Id*.  That is, "a plaintiff must establish that a supervisor's behavior constituted intentional discrimination on the basis of a protected characteristic."  *Id.*

Having already determined that the only adverse employment action to which Plaintiff was subjected was his assignment to menial tasks (*see supra* 10-11), the Court limits its consideration to only that discriminatory act.  With respect to Plaintiff's assignment to perform menial and janitorial tasks, Plaintiff failed to allege any allegations concerning independently actionable conduct by either Ceparano or Gonzalez.  Likewise, the complaint is devoid of allegations sufficient to confer supervisory liability on either of those Defendants.  That is, Plaintiff does not allege that either Ceparano or Gonzalez authorized or even acquiesced in Lagares' conduct with respect to the sole adverse employment action to which Plaintiff was subjected—his assignment to perform menial and janitorial tasks.  Accordingly, Plaintiff's § 1983 claims against Ceparano and Gonzalez must fail.

With respect to Plaintiff's § 1983 claim against Lagares, Defendants do not argue a lack of personal involvement, and instead contend that Plaintiff's claims should be dismissed on the merits based on the same arguments asserted with regards to Plaintiff's Title VII and ADEA discrimination claims.  (Defs.' Mem. 22-23.)  The Court agrees with respect to all of Plaintiff's claims except for Plaintiff's discrimination claims based on his assignment to complete menial and janitorial tasks.  Because Lagares personally assigned Plaintiff to perform menial and

janitorial tasks, she was directly involved in the constitutional violation and thus Plaintiff's claim on this ground survives.

## III.   Plaintiff's ADEA Claims

### A.   Discrimination

As with Title VII, to plead a claim of age discrimination under the ADEA and NYSHRL, a plaintiff must allege that: "(1) [he] was within the protected age group; (2) [he] was qualified for the position [he] held; (3) [he] suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Caskey v. County of Ontario*, 560 Fed. App'x. 57, 58 (2d Cir. 2014); *Schnabel v. Abramson*, 232 F.3d 83, 87 (2d Cir. 2000) (stating that ADEA claims are analyzed "under the same framework as claims brought pursuant to Title VII."); *see also Szewczyk*, 774 F. App'x 37, 38 (2d Cir. 2019) (stating that claims of age discrimination under the NYSHRL are analyzed under the same standards as Title VII and ADEA claims). Unlike in the Title VII context, an ADEA plaintiff must also plausibly allege that his age "was the 'but-for' cause of the employer's adverse action." *Mazzeo v. Mnuchin*, 751 F. App'x 13, 14 (2d Cir. 2018).

As a threshold matter, for the reasons stated above, the only conduct actionable as an adverse employment action is assignment to menial and janitorial tasks.[6] *See supra* 9-12. Here

---

[6] With respect to Plaintiff's alleged demotion in particular, the Court finds Plaintiff's allegations that he was subjected to a schedule change, loss of an exclusive parking space, and more physically demanding work, (Compl. ¶ 22, 46), insufficient to demonstrate injury or harm. *See Porter v. Half Hollow Hills Cent. Sch. Dist.*, No. 17-CV-5006, 2019 U.S. Dist. LEXIS 165586, at *19-20 (E.D.N.Y. Sep. 26, 2019) (dismissing ADEA discrimination claim, because plaintiff did not plausibly allege that her employer's transfer was a materially adverse employment action, as it did not affect her salary, benefits, title, or responsibilities; likewise, plaintiff failed to allege constructive termination, and failed to causally connect any of the alleged employment actions with her age). That is, these allegations do not sufficiently demonstrate that Plaintiff's transfer from plant manager back to patrol officer affected his salary or benefits, or was marked by any diminishment in responsibilities. In any event, even if the Court were to conclude that Plaintiff's alleged demotion amounted to an adverse employment action due to a change in title, Plaintiff's ADEA claim on this ground would still fail because Plaintiff has failed to sufficiently allege that his

again, Defendants maintain that Plaintiff has failed to demonstrate that Plaintiff's assignment to menial tasks occurred under circumstances giving rise to an inference of age discrimination or that his age was the but-for cause of the assignments.  (Defs.' Mem. 20-21.)

As in the Title VII context, a plaintiff asserting an ADEA claim alleges an inference of discrimination when he shows that his employer treated him less favorably than similarly situated employees outside of his protected class.  *See Palmer v. Shchegol*, 406 F. Supp. 3d 224, 230 (E.D.N.Y. 2016) ("Discrimination claims under Title VII and the ADEA are governed by the three-stage burden-shifting framework established in *McDonnell Douglas Corp. v. Green*." (citing *Littlejohn*, 795 F.3d at 312.)).  Plaintiff has done so here.  Specifically, Plaintiff alleges that he was tasked with performing menial and janitorial tasks.  (Compl. ¶¶ 33-34.)  Meanwhile, Officer Escolera—who was not yet 40 years old, less experienced than Plaintiff, and assumed the plant manager position after Plaintiff's demotion—has never been assigned to clean bathrooms, perform janitorial work, or go on "All Out Patrols."  (*Id.* ¶¶ 48-49.)  Accordingly, Plaintiff has sufficiently alleged an inference of age discrimination.

### B.    Hostile Work Environment

Defendants contend that Plaintiff's ADEA hostile-work-environment claim should be dismissed because the conduct alleged in this regard is not sufficiently severe or pervasive. (Defs.' Mem. 21-22.)  The Court agrees.

---

demotion occurred under circumstances giving rise to an inference of discrimination based on age.  *See Marcus v. Leviton Mfg. Co.*, 661 F. App'x 29, 33 (2d Cir. 2016) ("Without more, the mere fact that an older employee was replaced by a younger one does not plausibly indicate discriminatory motive."); *see also Payne v. Malemathew*, No. 09-CV-1634, 2011 WL 3043920, at *2 & n.3 (S.D.N.Y. July 22, 2011) (dismissing pro se plaintiff's ADEA claim of discrimination, because his allegation that he was the oldest employee in his department and that he was replaced by two younger employees after his termination did not support an inference of discrimination).

The ADEA protects individuals between the ages of forty and seventy from "arbitrary age discrimination in employment."  *Grant v. Hazelett Strip-Casting Corp.*, 880 F.2d 1564, 1568 (2d Cir. 1989).  With respect to discrimination claims based on hostile work environment under the ADEA, a plaintiff must demonstrate that "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment."  *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007).  At the pleading stage, a plaintiff need only "provide in the complaint a short and plain statement of [his] claim that shows that [he] [is] entitled to relief and that gives the defendant[s] fair notice of [his] claim for hostile work environment and the grounds upon which that claim rests."  *Id*. at 240-41 (finding that allegations that the plaintiff's supervisor repeatedly made degrading comments about to the plaintiff, "including, but not limited to, 'drop dead,' 'retire early,' 'take off all of that make-up[,]' and 'take off your wig.'" were sufficient to survive the defendant's motion to dismiss).  "The determination of hostility depends on whether a reasonable person would find the work environment to be hostile and whether plaintiffs subjectively perceived it to be so."  *Id*. at 240.  This standard has been interpreted by courts to require the same objective and subjective analysis employed in evaluating hostile work environment claims under Title VII.  *See Boonmalert v. City of New York*, 721 F. App'x 29, 33 (2d Cir. 2018) (evaluating the plaintiff's ADEA hostile-work-environment claim under the same standard used to analyze Title VII claims); *Alleva v. New York City Dep't of Investigation*, 696 F.Supp.2d 273, 283 (E.D.N.Y.2010), *aff'd*, 413 Fed. App'x. 361 (2d Cir. 2011) (same).

Plaintiff alleges that beginning in or around late June 2016, Lagares began calling him "boy," asking him how old he was, and asking him if he thought he was her child.  (Compl. ¶ 26.)  Though these statements may be considered inappropriate or even insulting, they are not

actionable under the ADEA, under which "[m]inor incidents do not merit relief." *Kassner*, 496 F.3d at 240.  Plaintiff's allegation concerning the Precinct's monitors fares no better.  According to Plaintiff, shortly after he was appointed plant manager, the electronic monitors in the Precinct, displayed the following message:  "congratulations on getting the plant manager position officer [Plaintiff] it only took you 24 years."[7]  (Compl. ¶ 27.)  To the extent the message contains an insult, it pertains to the amount of time it took Plaintiff to attain the promotion, not Plaintiff's age.  Similarly, Plaintiff's allegation that someone within the Precinct affixed a walking cane to Plaintiff's locker, and Defendants permitted it to remain affixed there for weeks, (Compl. ¶¶ 70, 77–78), is deficient as Plaintiff has not stated facts sufficient to indicate that those actions occurred because of his age.  Moreover, even if the cane was affixed to Plaintiff's locker because of his age, Plaintiff's claim would still fail as this incident alone amounts to nothing more than non-actionable, offensive conduct.

## IV.    Plaintiff's Retaliation Claims

To survive a motion to dismiss a retaliation claim under both Title VII and the ADEA, a plaintiff must allege facts that plausibly support an inference that: "(1) [the] defendants discriminated—or took an adverse employment action—against him, (2) 'because' he has opposed any unlawful employment practice." *Vega*, 801 F.3d at 90 (quoting 42 U.S.C. § 2000e-3(a)).

---

[7] Where an act contributing to a hostile work environment claim occurs within the filing period, "the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 17 (2002).  Because the affixation of the cane to Plaintiff's locker was insufficient to create a hostile-work-environment, the Court need not address Plaintiff's allegation that shortly after he was appointed Plant Manager, the monitors in the Precinct, which were under Lagares's control, displayed the following message "congratulations on getting the plant manager position officer [Plaintiff] it only took you 24 years."  (*See* Compl. ¶ 27.)

Defendants contend that Plaintiff's retaliation claims should be dismissed because Plaintiff has failed to allege facts sufficient to demonstrate that Defendants knew of his protected activity or that any adverse employment action occurred because of Plaintiff's protected activity. (Defs.' Mem. 14.)  In their brief, Defendants make several arguments in support of this contention.  (*See generally*, Defs.' Mem. 14-18.)  Specifically, Defendants contend, among other things, that:  (1) Plaintiff fails to allege facts demonstrating that Lagares and Gonzalez knew that Plaintiff participated in a protected activity;  (2) Plaintiff's allegation that Lagares conveyed a threat through Andersen is meritless;  (3) Appearance Control's visit is not actionable;  (4) Plaintiff failed to state whether he returned after his transfer from Plant Manager;  (5) Plaintiff does not allege who vandalized his locker or that he was harmed by Defendants' failure to remove the items;  and (6) Defendants are not responsible for Plaintiff's former attorney's alleged "sabotage" attempt.

In opposition, Plaintiff neglects to specifically respond to the vast majority of Defendants' arguments, and instead states only that "Defendants took cognizable adverse actions tethered to the protected activity of Plaintiff's complaints" and that he "has clearly satisfied his burden at the pleadings stage of demonstrating a cause of action for retaliation."  (Pl.'s Mem. 23.)  In other words, Plaintiff has abandoned his retaliation claims, and they are therefore dismissed.[8]  *See Joseph v. United States*, 740 F. App'x 12, 14 (2d Cir. 2018) (citing *Jackson v. Fed. Exp.*, 766 F.3d 189, 197–98 (2d Cir. 2014)) (affirming the district court's dismissal of

---

[8] In his opposition, Plaintiff responded to Defendants' characterization of his allegation that his union rep told Gonzalez and Lagares about his confidential EEO complaints as "conclusory and baseless." (Pl.'s Mem. 23.) Specifically, Plaintiff contends that whether the allegation is baseless creates an issue of fact not properly resolved on a motion to dismiss. (*Id.*) While true, this allegation alone is insufficient to save Plaintiff's claims as it speaks only to Defendants' possible knowledge of Plaintiff's protected activity, not to any of the other elements of his retaliation claims.

claims as abandoned on a motion to dismiss because "[w]here a partial response to a motion is made—*i.e.*, referencing some claims or defenses but not others ... in the case of a counseled party, a court may, when appropriate, infer from a party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *see also Adams v. New York State Educ. Dep't*, 752 F. Supp. 2d 420, 426 (S.D.N.Y. 2010) (dismissing plaintiffs' race discrimination and age discrimination claims as abandoned where "[Plaintiffs' opposition] papers fail[ed] to address substantive grounds raised by [d]efendants' motions [to dismiss], thereby supporting a finding that the underlying claims have been abandoned.") *aff'd sub nom. Ebewo v. New York State Educ. Dep't*, 460 F. App'x. 67 (2d Cir. 2012), *cert. denied sub nom., Cruz v. New York State Bd. of Educ.,* 568 U.S. 943, (2012); *Gill v. Phx. Energy Mgmt.*, No. 15-CV-1102, 2016 U.S. Dist. LEXIS 138093, at *14-15 (E.D.N.Y. Sep. 30, 2016) (deeming ADA retaliation claim abandoned, because "plaintiff neither dispute[d] Defendant's arguments, nor defend[ed] th[e] claim in anyway" and stating that "[w]here, as here, Plaintiff fails to address Defendant's arguments in his opposition, the Court deems Plaintiff's silence as a concession that Plaintiff is abandoning his claim.").

## V.   Plaintiff's § 1981 Claims Against the Individual Defendants

Section 1981 grants all persons within the United States "the same right . . . to make and enforce contracts . . .  as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."  42 U.S.C. § 1981. "The statute has long been viewed as prohibiting certain forms of discrimination based on race, and its reference to rights enjoyed by white citizens establishes the racial character of the rights being protected."  *Albert v. Carovano*, 851 F.2d 561, 571 (2d Cir. 1988) (internal quotations and citations omitted).  In the Second Circuit, to state a claim under § 1981, a plaintiff must allege

facts sufficient to demonstrate:  "(1) [that] the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).  As in the § 1983 context, a plaintiff asserting claims against individuals in their official capacities under § 1981 must also allege that each individual was personally involved in the conduct that violated the plaintiff's rights.  *See Patterson*, 375 F.3d at 229 (stating same standard for claims asserting individual liability under §§ 1981 and 1983).

Defendants contend that Plaintiff's § 1981 claim should be dismissed against Ceparano and Gonzalez because Plaintiff has failed to sufficiently allege their personal involvement in any discriminatory acts.  (Defs.' Mem. 22.)  Defendants are correct.  With respect to Ceparano, the complaint includes only allegations regarding a single incident during which Ceparano, along with Lagares, allegedly made false allegations against Plaintiff regarding his work performance.  (Compl. ¶¶ 15, 44, 65.)  This lone incident is insufficient to confer personal or supervisory liability on Ceparano under § 1981.  Plaintiff's claim against Gonzalez fares no better.  Plaintiff alleges that Gonzalez had supervisory authority over Lagares; was made aware that Lagares wanted to demote Plaintiff, and suggested the Plaintiff secure his position by engaging in intercourse with Lagares; made false allegations (along with Lagares) to the Appearance Control officers to intimidate Plaintiff; and allowed vandalism to remain on Plaintiff's locker.  (Compl. ¶¶ 14, 39, 61, 77).  Yet, Plaintiff fails to sufficiently allege that any action taken by Gonzalez constituted intentional discrimination on the basis of Plaintiff's race.  Accordingly, Plaintiff's claims against Ceparano and Gonzalez must fail.

22

Again, as to Plaintiff's claims against Lagares, Defendants rely on the arguments asserted for dismissal of Plaintiff's Title VII discrimination claims.  (Defs.' Mem. 22-23.)  Here, however, this argument is unsuccessful.  Plaintiff alleges that Defendant Lagares asked Plaintiff "how old are you," "Do you think you are my child," and called Plaintiff "boy;" ordered Plaintiff to perform menial and janitorial tasks; assigned Plaintiff to go on "All Out Patrols;" and demoted Plaintiff based on his race.  (*Id.* ¶¶ 26, 34, 38, 41-43, 46.)  As stated above, claims asserted under § 1981 are subject to a three-year statute of limitations, and to defeat a motion to dismiss, a plaintiff need only plead that he is a member of a racial minority against whom the defendant personally intended to discriminate on the basis of his race, in the course of his employment. *Mian*, 7 F.3d at 1087.  Plaintiff has done so here.  Accordingly, Plaintiff's § 1981 claim against Lagares survives.

**VI.    Plaintiff's Claims Against Defendant City of New York**

Defendants contend that Plaintiff's municipal liability claim must fail because Plaintiff has not pleaded facts sufficient to demonstrate that any violation of his constitutional rights occurred under an official policy or custom.  (Defs.' Mem. 22.)  To state a claim for municipal liability, a plaintiff "must allege that 'the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [the municipality's] officers.'"  *Ceparano v. Suffolk Cnty. Dep't of Health*, 485 F. App'x 505, 508 (2d Cir. 2012) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978)).[9]  In addition, a municipality "may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval

---

[9] Where an individual defendant is sued for discrimination under § 1981 or § 1983 in his or her official capacity, the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom. *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004).

23

through the [municipality's] official decision[-]making channels." *Id*. (quoting *Monell*, 536 U.S. at 690-691). As Defendants correctly contend, Plaintiff has failed to allege any such custom or policy. Because Plaintiff has failed to sufficiently allege that any discrimination occurred pursuant to an NYPD policy, rather than Lagares' individual animosity towards him, Plaintiff's municipal liability claim against the City of New York must be dismissed.

## VII.   Plaintiff's City Law Claims

"[C]laims under the NYCHRL are to be evaluated separately from federal and state law claims and given liberal, independent construction." *Gorokhovsky v. New York City Hous. Auth.*, 552 F. App'x 100, 101 (2d Cir. 2014). Moreover, "NYCHRL claims are to be reviewed more liberally than Title VII claims, and the provisions of the NYCHRL must be construed broadly in favor of plaintiffs alleging discrimination." *Johnson v. Andy Frain Servs., Inc.*, 638 F. App'x 68, 71 (2d Cir. 2016). Defendants proffer several arguments in support of their motion to dismiss Plaintiff's NYCHRL claims. (*See generally*, Defs. Mem. 23-25.) Because Plaintiff's opposition is devoid of any response to Defendant's arguments, however, the Court need not address Defendants' arguments on the merits as Plaintiff's NYCHRL claims are deemed abandoned.

### CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED in part and DENIED in part. Defendants' motion is GRANTED with respect to Plaintiff's gender-based Title VII, § 1983, § 1981, and NYSHRL claims; Title VII and ADEA retaliation claims; Title VII and ADEA claims based on all alleged adverse employment actions except for Plaintiff's assignment to menial tasks; § 1983 and § 1981 claims against Defendant Ceperano and Gonzalez; and NYCHRL claims. Defendants' motion is DENIED with respect to Plaintiff's Title VII, § 1983, NYSHRL, and ADEA claims based on Plaintiff's assignment to menial tasks;

Title VII hostile-work-environment claim; § 1983 claim against Defendant Lagares based on

Plaintiff's assignment to menial tasks; and § 1981 claim against Defendant Lagares.

                                          SO ORDERED.

Dated:  Brooklyn, New York              /s/ LDH
        November 23, 2020               LaSHANN DeARCY HALL
                                        United States District Judge